**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-CR-20311-WILLIAMS

**UNITED STATES OF AMERICA,**

v.

**FRANCISCO TAVAREZ MENDEZ,**

Defendant.

---

## DEFENDANT FRANCISCO TAVAREZ MENDEZ'S MOTION FOR VARIANCE AND SENTENCING MEMORANDUM

Defendant, Francisco Tavarez Mendez ("Tavarez"), hereby files this Motion for Variance and Sentencing Memorandum in support of a sentence below the applicable Sentencing Guidelines range. In support thereof, Tavarez states as follows:

## INTRODUCTION

The Court should grant Tavarez a downward variance and sentence him to 92 months. Every sentencing is "a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). This case falls on the side of mitigation. Tavarez has no prior criminal history. *See* PSR ¶¶ 71-73. He is the 62-year-old parent of a three-year-old daughter, a parent to five other children, a loving partner, a devoted son, and a generous supporter of his community. The offense before the Court represents an aberration (for which Tavarez makes no excuse) in what has otherwise been a responsible and law-abiding life, marked by strong family relationships, consistent support for family, and a history of stable, honest employment. A sentence of 92 months reflects this reality and remains substantial, while being sufficient but not greater than necessary to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 41

(2007) (holding that a district judge's downward variance was reasonable given the defendant's lack of criminal history, minimal role involvement, no use of weapons, and withdrawal from the conspiracy before arrest).[1]

## I. A JUST AND "SUFFICIENT BUT NOT GREATER THAN NECESSARY" SENTENCE UNDER 18 U.S.C. § 3553(a)

A judge possesses great flexibility in imposing a sentence. *See United States v. Costa*, 947 F.2d 919, 928 (11th Cir. 1991) ("[A] sentencing judge has broad discretion in the imposition of criminal sentences."); *see also United States v. Wetherald*, 636 F.3d 1315, 1323 (11th Cir. 2011) (affirming a sentence "below the advisory guideline range because the Court believes the sentence it will impose will reflect the seriousness of the offense and provide just punishment."). Under 18 U.S.C. § 3553(a), the Court must consider: (1) the nature and circumstances of the offense as well as the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the types of sentences available; (4) the sentencing range established for the applicable category of offense committed by defendant as set forth in the Guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to offense's victims. *See United States v. Rivero*, 762 F. Supp. 3d 1245, 1248 (S.D. Fla. 2024) (citing 18 U.S.C. 3553(a)). An analysis of the § 3553(a) factors support the imposition of a 92-month sentence for Tavarez.

---

[1] On March 18, 2026, Tavarez pled guilty to Count One of the Indictment, which charged him with conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 963. The PSR recommends a total offense level of 33, with a Criminal History Category I that carries a Guidelines imprisonment range from 135 to 168 months. PSR ¶ 60. On August 20, 2026, Tavarez filed an Objection to paragraph 60 of the PSR, which incorrectly concludes that Tavarez does not satisfy the safety valve requirements of USSG § 5C1.2(a)(5) and is therefore ineligible for a two-level reduction in his offense level. *See* D.E. 100. As set forth in the Objection, the applicable Guidelines range included in the PSR should be reduced to 108-135 months, reflecting a total offense level of 31. The Court should grant the variance requested by Tavarez based on that range.

**A. The Nature and Circumstances of the Offense.**

Tavarez has pled guilty to the offense at issue and makes no excuses for his actions. However, the nature and circumstances of his offense are materially less severe than those present in conventional narcotics-trafficking conspiracies. Therefore, a 92-month sentence is appropriate. The record reflects no use of firearms, no threats, and no acts of violence. Tavarez was not a leader, organizer, nor a decision-maker within the operation. Instead, his role was limited to the physical delivery of cocaine—supplied by a co-conspirator—to other co-conspirators in the Dominican Republic. PSR ¶¶ 45-47. He was not the source of the cocaine, did not purchase or otherwise provide any consideration for it, and had no role in its manufacture. Nor was he responsible for directing the logistics or the broader operations of the conspiracy. *Id.* Tavarez has agreed to voluntarily and immediately forfeit any and all property derived from the offense. *Id.* ¶ 7. While not diminishing the seriousness of Tavarez's conduct, these facts demonstrate that Tavarez has fully accepted responsibility and stands ready to be held accountable.

The underlying offense took place between 2017 and 2020—five years before Tavarez's arrest. In those five years, Tavarez reevaluated the purpose of his life and fully withdrew from all criminal conduct, instead focusing on earning an honest living by cultivating and selling agricultural crops in his farm in Yasica Arriba, Puerto Plata, Dominican Republic. *Id.* ¶¶ 89-90; *see also Gall*, 552 U.S. at 500 (affirming a downward variance because the district court reasoned that a defendant's initiative to change their life pre-arrest "lends strong support to the District Court's conclusion that [a defendant] is not going to return to criminal behavior and is not a danger to society."); *United States v. Contino,* 608 F'Appx 817, 822 (11th Cir. 2015) ("The district court also specified its reasons for the downward variance . . . (1) 'the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)'

and (2) 'to avoid unwarranted sentencing disparities among defendants'"). This pre-arrest conduct, coupled with the nature and circumstances of the offense, further supports the requested variance and sentence.

**B. History and Characteristics of Tavarez.**

Courts can weigh the history and character of a defendant against the nature and circumstances of the offense and impose a sentence below the recommended Guidelines' range. *See United States v. Gray*, 453 F.3d 1323, 1324 (11th Cir. 2006) (affirming a 72-month sentence when the guideline range was 151 to 188 months because the court took into consideration "age, prior minimal record, and his medical condition."); *see also United States v. McBride*, 511 F.3d 1293, 1295 (11th Cir. 2007) (affirming an 84-month sentence when the recommended guideline range was 155-188 months because of the Defendant's personal history); *Contino*, 608 F'Appx at 822 (same). As shown below, Tavarez's history, character, and strong family and community relationships, support the requested variance and 92-month sentence.

Tavarez is a devoted son to his elderly mother and a loving 62-year-old father to six children. PSR ¶¶ 79, 83. Born in Santiago, Dominican Republic, Tavarez is one of six children and has devoted his life to providing for his family. *Id.* ¶¶ 80, 83. He spent most of his childhood working on the family farm in Santiago, Dominican Republic. *Id.* ¶ 81. He was in school until the tenth grade when he was forced to drop out of school to spend more time on the family farm. *Id.* ¶ 104. His entire family is aware of his legal situation and remains supportive. *Id.* His children, Alan (age 40), Cristian (38), Edgardo (32), Ranffi (21), Sonya (20), and Georgina (3), remain in close contact and recognize that Tavarez has been a dedicated father since their childhood. *See, e.g.,* **Exhibit 1**, Letter from Alan Francisco Tavarez; **Exhibit 2**, Letter from Edgardo Tavarez; **Exhibit 3**, Letter from Ranffi Tavarez; **Exhibit 4**, Letter from Sonya Tavarez Cepeda. His ex-wife, Massiel

Cepeda, who is the mother of his children, Sonya and Ranffi, affirms Tavarez's devotion to his family and his good character. *See* **Exhibit 5**, Letter from Massiel Cepeda. Close relatives and friends further attest that Tavarez:

a. "[is] a person of integrity, kindness, and responsibility . . . dependable and follows through on his commitments." **Exhibit 6**, Letter from Luisa Pena;

b. "has always treated me with respect and kindness, and I have seen how present he is for those closest to him." **Exhibit 7**, Letter from Fran F. Tavarez;

c. "is someone who genuinely cares about his family and the people around him . . . a positive presence." **Exhibit 8**, Letter from Mildred Morrobel;

d. "is someone I can look up to. He spends time with me, talks to me, and makes me feel important." **Exhibit 9**, Letter from Franmy A. Tavarez;

e. "was consistently responsible, hardworking, and devoted to his family . . . has also shown a consistent willingness to help others." **Exhibit 10**, Letter from Yuderka McCarthy;

f. "has always shown care for our family, a sense of responsibility, and a willingness to help those around him." **Exhibit 11**, Letter from Ramon Eugenio Tavarez;

g. "has always been supportive, protective, and present when it matters most." **Exhibit 12**, Letter from Francisco Gerineldo Tavarez;

h. "values his relationships and takes them seriously . . . will continue to make positive choices and be a supportive member of his family and community." **Exhibit 13**, Letter from Katty E Pena De Tavarez.

Before his arrest, Tavarez lived and worked on his farm in Yasica Arriba, Puerto Plata, Dominican Republic. Tavarez also cared for his 87-year-old mother, who lives in Santiago, Dominican Republic, and with whom he maintains a very close relationship. *See* **Exhibit 14**, Letter from Lourdes Teolinda Mendez de Tavarez. In 2020, he entered into a committed relationship with Austria Suarez, who is the mother of his youngest daughter Georgina, now three years old. PSR ¶ 82. Ms. Suarez echoes the sentiments of everyone who knows Tavarez and affirms that he is "compassionate" and maintains a "strong sense of responsibility toward his family." *See* **Exhibit 15**, Letter from Austria Altagracia Suarez Corcino. Tavarez has always been a pillar to his family

and community, and now his elderly mother and youngest daughter need him more than ever. After serving his sentence, Tavarez intends to return to the Dominican Republic and focus on supporting his family. A sentence of 92 months is sufficient, but not greater than necessary, to afford Tavarez this opportunity while also serving the purposes of federal sentencing.

**C. Tavarez's Employment History.**

A district court acts within its discretion when it sentences a defendant below the Guideline range due to a defendants "excellent employment history, solid community ties, and consistent efforts to lead a decent life." *U. S. v. Big Crow*, 898 F.2d 1326, 1332 (8th Cir. 1990). "According to the literature, the determining factors for success or failure in reintegration into the community can be associated with family and community relationships, job stability, [and] housing stability" among other factors. Ana Mourão et al., *Beyond Recidivism: A Systematic Review Exploring Comprehensive Criteria for Successful Reintegration After Prison Release*, 52 Crim. Just. & Behavior 1173 (2025), https://doi.org/10.1177/00938548251335322. In addition to Tavarez's history and characteristics, strong family and community relationships, his past employment history of stable, honest income also decreases his risk of rearrest or recidivism and militates in favor of the requested variance. *See United States v. Perry*, 397 F. App'x 521, 522 n.1 (11th Cir. 2010) ("[W]ork history and finances both are related to § 3553(a)(2)'s goals of deterring future illegal activity and protecting the public because, if [a defendant] could financially support himself and his dependents through lawful employment, it logically follows that he would be less likely to engage in illegal activity for profit.") Indeed, although Tavarez does not have a high school degree or any formal license or certification, he has spent most of his life making an honest living.

Notwithstanding the conduct at issue in this case, for which Tavarez makes no excuses, Tavarez's life reflects a long record of steady work, self-reliance, and lawful income. Early in life,

in addition to his work on his family's farm, he worked at "Los Muchachos," a shoe store in Santiago, Dominican Republic. In 1988, he entered the secondhand automobile industry, buying vehicles in New York and shipping them to the Dominican Republic for resale, a business he continued until 1996. He then founded and worked for TH Cigars, a cigar-manufacturing company, from 1996 to 2000. Beginning in 2000, Tavarez founded and worked for "Banca Kiko," a legal sports betting agency, known as "Casas de Apuestas," in the Dominican Republic, where he remained until 2010.[2] Later, he returned to used-car sales through Delta Car Trade in West Palm Beach, where he worked as an independent car salesman, earning approximately $3,000 to $4,000 per month. PSR ¶ 109. Upon release, Tavarez intends to return to honest, stable work, and will never again get involved in the conduct that led to his arrest.

Tavarez further intends to spend his sentence productively by completing his high school education and earning his General Equivalency Diploma ("GED"). PSR ¶ 106. In addition, Tavarez will apply to the Residential Drug Abuse Program for substance abuse treatment. PSR ¶ 103. His desire to become a better person is central to his character, which is not altered by the consequences that he now faces. *See* **Ex. 7**, Fran F. Tavarez ("What stands out is his willingness to grow, learn from his experiences, and continue moving forward."); **Ex. 9**, Franmy A. Tavarez ("I see him as someone who cares about his family and wants to do better."); **Ex. 10**, Yuderka McCarthy ("I believe he has the capacity to change and to contribute positively moving forward.").

---

[2] Sports betting has been legal in the Dominican Republic since 1965. *See United States v. Truesdale*, 152 F.3d 443, 447 (5th Cir. 1998) ("[T]he bets were taken in the Dominican Republic or Jamaica (where such activity is legal)"); *see also United States v. $734,578.82 in U.S. Currency,* 286 F.3d 641, 652 (3d Cir. 2002) ("The court's holding was based upon its conclusion that the actual bookmaking (i.e. accepting bets), actually occurred in the Dominican Republic and Jamaica where it was legal.")

These factors also demonstrate that Tavarez deserves a downward variance and supports the imposition of a 92-month sentence by this Court.

**D. The Need to Avoid Unwarranted Sentence Disparities.**

Uniform sentencing for similarly situated defendants is essential to a just sentence. *See Rosales-Mireles v. United States*, 585 U.S. 129, 140 (2018) ("[T]he public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair'") (citation omitted). Courts are directed to provide "certainty and fairness" by avoiding unwarranted sentence disparities. *See United States v. Booker*, 543 U.S. 220, 253 (2005) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."). The Court sentenced Tavarez's co-defendant, Pedro Juan Dominguez ("Dominguez"), to 92 months imprisonment, 5 years supervised release, and a $100 special assessment. PSR at 2. Dominguez similarly pled guilty to Count One of the Indictment on July 8, 2025. Tavarez and Dominguez played a comparable role in the same underlying conspiracy. *Cf.* PSR ¶¶ 40-44 *with* ¶¶ 45-47. Additionally, Dominguez and Tavarez were both allegedly involved in money laundering, although neither were charged for the offense. *Id.* at ¶¶ 40-47. Importantly, Tavarez and Dominguez were both given the same role assessment. PSR ¶¶ 40, 45, 55.

The average sentence for similarly situated defendants over the past five years is 89 months. *See* U.S. Sentencing Commission, Judiciary Sentencing Information (JSIN), U.S. Sent'g Comm'n, https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited June 25, 2026).[3] The data

[3] Judiciary Sentencing Information ("JSIN") platform data reveals that defendants sentenced under § 2D1.1 with powder cocaine as the primary drug type, a Final Offense Level of 31, see footnote 1 *supra*, and a Criminal History Category of I, received an average sentence of 89 months and a median sentence of 87 months, after excluding § 5K1.1 substantial-assistance departures. The JSIN data calculates average sentence length by offense level, not drug quantity. That said, drug quantity is already accounted for in the offense level because it determines the base offense level. The referenced data is therefore fully applicable to this case.

collected was compiled using 782 similarly situated defendants. The lower-than-guideline average sentence is due to the fact that more than half (56%) of defendants that were similarly situated received a downward departure or variance. Accordingly, a 92-month sentence is more than reasonable, placing Tavarez in a similar position to comparable defendants.

**E. Pertinent Policy Statements.**

Coupled with his characteristics, family and community ties, and employment history, Tavarez's lack of criminal history, non-violent offense, and age make it highly likely that he will reintegrate successfully into society after his sentence. *See United States v. Russell,* No. 2:20-CR-293-MHH-SGC, 2022 WL 17178659, at *2 (N.D. Ala. Nov. 23, 2022) (sentencing defendant to time served and five years of supervised release on a similar drug related offense with the same guideline range of 108-135 months); *see also United States Sentencing Commission, Recidivism of Federal Drug Trafficking Offenders Released in 2010,* p. 55, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2022/20220112_Recidivism-Drugs.pdf ("[T]he two indicators most clearly correlated with recidivism among drug trafficking offenders were criminal history and age. Generally, as offenders' criminal history points increased, the recidivism rate likewise increased . . . while those 60 years and older at the time of their release had the lowest rearrest rate."); *see also* U.S. Department of Justice, National Institute of Justice, Five Things About Deterrence, p. 2, https://www.ojp.gov/pdffiles1/nij/247350.pdf (explaining that data shows "a steep decline" in criminal behavior "at about age 35"). The Sentencing Commission's Report shows that, among defendants in Criminal History Category I, like Tavarez, recidivism rates decline with age, with defendants aged 60 or older recidivating at a rate of just 10.9 percent. *Recidivism of Federal Drug Trafficking Offenders Released in 2010* at 32.

Since his incarceration, Tavarez has participated in activities focused on self-improvement and reflection, including daily exercise and reading self-improvement books by authors such as Paulo Coelho and Ghandi, and also reading the Bible. PSR ¶ 59. These factors highly correlate to reductions in recidivism:

> Changes in thinking and behavior, including resilience; the use of task-oriented coping strategies, a sense of effectiveness in managing daily life, personal motivation, and a desire to turn past experiences into positive contributions by helping others and supporting their family, were associated with better social reintegration. Older age is also associated with higher success rates.

Mourão et al., 52 Crim. Just. & Behavior at 1175 (citations omitted). Tavarez has thus already demonstrated a commitment to change his thinking and redeem his mistakes. Indeed, while his age is no excuse and he does not ask for leniency on that basis alone, at 62 years old, and having never committed a crime prior to this offense, Tavarez is statistically less likely to recidivate upon his release (defendants younger than 21 in the same criminal history category had a 65% rearrest rate, compared with 10.9% for defendants aged 60 and older). *See Recidivism of Federal Drug Trafficking Offenders Released in 2010* at 32. His involvement in the offense conduct, which constitutes aberrant behavior in an otherwise law-abiding and productive life, began when Tavarez was in his mid-fifties, and he has since demonstrated the resolve and personal growth necessary to ensure that this offense represents an isolated departure from a life otherwise defined by honest hard work, family, and community.

## **CONCLUSION**

Defendant Francisco Tavarez Mendez respectfully requests the Court sentence him to 92 months based on the specific facts detailed above. The provisions of 18 U.S.C. § 3553 support the imposition of a just and reasonable sentence of 92 months. *Williams v. New York*, 337 U.S. 241, 247 (1949) ("[T]he punishment should fit the offender and not merely the crime."). Tavarez is a first-time, non-violent offender who serves as the financial, emotional, and practical backbone of

his family—raising a young daughter while caring for an ailing mother. With the support of his friends and family, he will continue to rectify his mistakes and reclaim his place as a productive member of society.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Carlos Andreu Collazo*
CARLOS ANDREU COLLAZO

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
**BENJAMIN G. GREENBERG**
Florida Bar No. 192732
greenbergb@gtlaw.com
**CARLOS J. ANDREU COLLAZO**
Florida Bar No. 1041252
Carlos.Andreu@gtlaw.com
**JOHN PATRICK KELLER**
Florida Bar No. 1035640
Jack.Keller@gtlaw.com

*Attorneys for Francisco Tavarez Mendez*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 21, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and also certify that the foregoing document is being served this day on all counsel of record.

*/s/ CARLOS ANDREU COLLAZO*
CARLOS ANDREU COLLAZO